IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


SAMSON "SAM" COSTALES,

    Plaintiff,

vs.                                                                                       Civ. No. 07-827 MV/ACT

RAY SCHULTZ; ALBUQUERQUE
POLICE DEPARTMENT; and JOHN DOES
1-5,

    Defendants,


**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiff's Objections to Magistrate Judge Torgerson's December 10, 2008 Discovery Order filed December 23, 2008 **[Doc. 116]**. The Court, having considered the motion, relevant law, and being otherwise fully informed, finds that the objection is not well-taken and will be **OVERRULED**.

**BACKGROUND**

Mr. Costales brings this § 1983 lawsuit against Defendants, arising out of an incident occurring August 9, 2006, that involved the arrest of Al Unser by two Bernalillo County Sheriff's deputies in Albuquerque, New Mexico. A third sheriff's deputy was present. At the time, Costales was on duty as an Albuquerque Police Department ("APD") officer and witnessed the arrest of Mr.

1

Unser. Costales believed that the deputies' treatment of Mr. Unser during the arrest was inappropriate and extreme. Costales reported the deputies' alleged misconduct to one of his APD supervisors. Costales claims that at the criminal trial of Mr. Unser, all three of the Sheriff's deputies who testified lied about their interaction with and their conduct during the arrest of Mr. Unser. Costales was subpoenaed as a lay witness to testify about his observations of the arrest. His testimony contradicted the deputies' testimony. [Doc. 20, Joint Status Report.]

As a result of Costales' report of the alleged misconduct and trial testimony, he claims he became the victim of retaliation and defamation by APD and Chief Schultz. His civil rights complaint initially asserted claims against a number of Defendants, including APD and Chief Schultz. [Doc. 70, Amended Complaint for Deprivation of Civil Rights, Slanderous Defamation, Constructive Retaliatory Discharge and Spoilation/Destruction of Evidence.]

Defendants deny Costales' contentions and affirmatively state they did not engage in any retaliatory, defamatory or other tortious conduct against Costales. Defendants claim their actions were motivated by legitimate, non-discriminatory business reasons and were made in good faith and in a reasonable manner, given the existing information and circumstances. Defendants further assert that Costales' claims are barred because his statements did not relate to matters of public concern and were made in connection with his official duties and responsibilities as an employee of the City of Albuquerque. Defendants also contend that Chief Schultz's actions were objectively reasonable under the circumstances and authorized by clearly established law, entitling him to the defense of qualified immunity. [Doc. 20.]

This discovery dispute initially arose out of a Motion to Compel Discovery filed by Costales in May 2008. [Doc. 62.] On July 2, 2008, the Court entered an Order granting in part and denying

in part Costales' Motion to Compel ("Discovery Order"). [Doc. 89.] The Discovery Order directed Defendants to provide supplemental answers to some of Costales' discovery requests by July 22, 2008, four days before the close of discovery. [Doc. 89.]

Defendants' deadline to produce the supplemental discovery passed without any production. Defense counsel states that "for unknown reasons, the receipt and terms of the [Discovery Order] were not noted and the deadline for discovery production was not calendared." [Doc. 102, p. 2.] Defense counsel admits the failure to timely comply with the Discovery Order but claims it was inadvertent.

Plaintiff's counsel initially did not notice that Defendants failed to produce the supplemental discovery because they were preparing for trial and were in trial in August 2008. On August 27, 2008, Plaintiff's counsel notified defense counsel of Defendants' failure to comply with the Discovery Order. Plaintiff's counsel was informed that defense counsel, Kathryn Levy, was out of the country until September 3, 2008. [Doc. 99.]

On September 4, 2008, Plaintiff's counsel asked defense counsel when Plaintiff could expect to receive the supplemental discovery that had been due on July 22, 2008. Plaintiff's counsel claims she was told Defendants would produce the discovery on September 9 and then on September 10, 2008. According to Plaintiff's counsel, Defendants provided some but not all of the information on September 11, 2008. [Doc. 99, p. 2.]

On September 12, 2008, Plaintiff's counsel notified defense counsel that not all of the information was provided as directed by the Discovery Order and gave Defendants until September 15, 2008 to produce the additional information. During the lunch hour on September 15, 2008, Ms. Levy personally hand-delivered some additional documents to Plaintiff's counsel's office. Among

the hand-delivered documents was a cover letter describing the enclosed documents and a stack of e-mails. A paralegal with Plaintiff's counsel's office reviewed the documents while Plaintiff's counsel, Randi McGinn, was out of the office. The paralegal flagged what he considered to be important documents. Upon Ms. McGinn's return from lunch, the paralegal informed her that among the materials he reviewed was a document indicating that Chief Schultz said he was not going to produce a true copy of his calendar for the relevant dates, regardless of the Court's Order, and that he was willing to go to jail rather than produce a true copy of the court-ordered document. [Doc. 99, p. 3.] Ms. McGinn asked her paralegal where this information came from, and he told her the communication was found in an e-mail communication between Chief Schultz and Ms. Levy. At that point, Ms. McGinn asked to see the cover letter submitted with the documents and advised her paralegal not to reveal the contents of any other e-mails.

In the cover letter, Ms. Levy stated:

> Request No. 6: Attached is a privilege log, stating the dates of emails to and from Chief Schultz which are claimed to be privilege. [sic] The emails are between client and counsel and are identified by date and subject matter (Costales litigation). [Doc. 102, Ex. C, p. 2.]

Nothing in the cover letter indicated that the actual e-mails were being produced, nor would there be an expectation that the e-mails were being produced in view of the description of the privilege log. Further, in Plaintiff's reply, Ms. McGinn acknowledged when she reviewed the cover letter that she realized Defendants intended to produce a privilege log, rather than the actual e-mail communications. [Doc. 104, p. 2.] Notwithstanding the cover letter's description of what was supposed to be enclosed, Ms. McGinn's paralegal reviewed at least some of the actual e-mail correspondence between Chief Schultz and Ms. Levy. Once Ms. McGinn realized the information

4

described by her paralegal came from privileged communications, she sealed the e-mail communications in an envelope, set them aside, and instructed the paralegal not to discuss their content with anyone else in the office. On that same day, September 15, 2008, Ms. McGinn faxed Ms. Levy a letter informing her that instead of producing the privilege log, as indicated in Ms. Levy's cover letter, Defendants had produced the e-mails themselves. [Doc. 102, Ex. E.] Ms. McGinn wrote: "Since I do not know whether the delivery of these e-mails came out of a sudden burst of candor on your part or was a mistake, I have not looked at any of the e-mails." [Id.]

Ms. McGinn further informed Ms. Levy that since some of the information about which she was informed "may indicate a fraud upon counsel and the court relating to the discovery, I cannot return these documents to you. . . ." Instead, Ms. McGinn proposed submitting the sealed envelope containing the e-mails to the Court along with a brief on the alleged crime-fraud exception to the attorney-client privilege.

Upon receipt of Ms. McGinn's September 15 letter, Ms. Levy responded in writing, stating that "[o]bviously, the emails were delivered in error and are, in fact, privileged documents as described in my [cover] letter to you." Ms. Levy's letter also stated that the calendar produced to Plaintiff was Chief Schultz's entire calendar and was downloaded directly from his computer at the City of Albuquerque. Ms. Levy further explained that "Chief Schultz was clearly joking when he referenced that he would go to jail before he would produce his calendar. Chief Schultz and I have a long history of banter in our emails; it does not mean that he would ever violate a court order. He has not done so in this case." [Defendants' September 15, 2008 letter to Plaintiff's counsel.]

Ms. Levy also informed Ms. McGinn that Chief Schultz would provide an affidavit to the effect that he produced his calendar and that it is the only calendar he keeps. "In an effort to respond

5

to your demand that the order also requires a log identifying who he met with and the subject of the meetings, we are looking to see if there are any meetings not reflected on his calendar. That is part of the log we are finalizing . . . ." [Id.] In addition, because Ms. McGinn challenged Chief Schultz's honesty, defense counsel told Ms. McGinn that Chief Schultz would agree to allow a computer specialist of Plaintiff's choosing access to his computer to confirm that the documents produced included his entire calendar for the time period specified in the Court's Discovery Order. Moreover, Defendants agreed to pay for the examination. Ms. Levy asked Ms. McGinn to advise her whether this proposal was acceptable and further noted that the City would make the computer available to Plaintiff as soon as Plaintiff advised that he agreed with this approach. [Id.]

There apparently was no response from Plaintiff to defense counsel's proposal. Instead, Costales filed a motion for sanctions and request for an *in camera* review of the documents sealed in the envelope, and provided the envelope of sealed documents to the Court.

In Defendants' response to the motion for sanctions, Ms. Levy repeated that "Unfortunately, due to a clerical error, the actual emails were . . . delivered [to Plaintiff instead of the privilege log.]" [Doc. 102, p. 3.] Defense counsel also noted that she did not receive a response from Ms. McGinn regarding her proposal. In addition, Defendants produced a log regarding Chief Schultz's calendar that set out more detail regarding his scheduled meetings. [Doc. 102, p. 4, Ex. F.] Discovery closed in this case on July 26, 2008. [Feb. 26, 2008 Docket Entry.] Pretrial motions were due by September 14, 2008. The Court set this case for a jury trial on May 18, 2009. [Doc. 96.]

## STANDARD OF REVIEW

A district court may modify or set aside a ruling of a magistrate judge only if it is "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). Under the clearly erroneous standard, the reviewing court must affirm unless the court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

## DISCUSSION

Plaintiff objects to the portion of the order denying his request for an *In Camera* review and production of the e-mail communication between Defendant Chief Schultz and his lawyer that was hand-delivered to Plaintiff's office by defense counsel. Plaintiff objects to the denial on two grounds, the crime-fraud exception to the attorney-client privilege, and Defendant's bad faith responses to discovery.

The Plaintiff asserts that Magistrate Judge Torgerson erred in denying his request for an *In Camera* review of the e-mail and denying the production of that document. In so arguing, Plaintiff relies upon the test set forth by the United States Supreme Court in *United States v. Zolin*, 491 U.S. 554, 572 (1989) where the Court explained its two-pronged test:

> 1. It must be determined whether there has been a "showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id*.
>
> 2. If such a showing is made, the court must analyze the "facts and circumstances of the particular case" to determine whether it would be prudent to review the materials that it has been requested to review before concluding that the crime-fraud exception does not apply. *Id*.

The magistrate judge found that "it is doubtful that Plaintiff can rely on the privileged contents of the e-mail in dispute as evidence of a crime or fraud on the Court and counsel". Plaintiff argues that this is contrary to the court's ruling in *Zolin*. However, the *Zolin* court found that, "partial transcripts, or other evidence directly but incompletely reflecting the content of the contested communication, ***generally*** will be strong evidence of the subject matter of the communications themselves." *Id*. at 573 (emphasis added). The Zolin court clearly did not find that such evidence is always evidence of the communications or that it shall be construed as such. The court stated that "generally" it will be strong evidence. This leaves the determination to be made based upon the totality of the evidence and the materiality of the evidence requested to be reviewed.

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." *In re Qwest Communications Int'l*, 450 F.3d 1179, 1185 (10th Cir.) (*quoting Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981), *cert. denied*, 127 S.Ct. 584 (2006)). The purpose of the attorney-client privilege is to "encourage clients to make full disclosure to their attorneys." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The attorney-client privilege protects from discovery communications made in confidence between a client and the attorney. *Upjohn Co.*, 449 U.S. at 395-96; *In re Qwest Communications*, 450 F.3d at 1185. To warrant the privilege's protection, "a communication between a lawyer and client must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998), *cert. denied*, 525 U.S. 1088 (1999).

The party seeking to assert a privilege has the burden of establishing its applicability. *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985). As Magistrate Judge Torgerson found, the e-

8

mail communications between counsel and her client regarding the production of requested discovery are protected by the attorney-client privilege. They clearly were confidential communications between counsel and her client concerning legal advice with regard to this lawsuit.

Arguably, Plaintiff's assertion that the first prong of the *Zolin* test is somewhat lenient is not wholly incorrect. However, this prong of the test is not an absolute grant of the right for an *in camera* review upon any claim that it is necessary. There must be a good faith belief by a reasonable person that the review may reveal evidence to show that the crime-fraud exception applies. A good faith belief by a reasonable person is somewhat of a subjective standard, and must be reviewed in light of the evidence at hand and the facts of the matter in dispute. Magistrate Judge Torgerson's conclusion that the "year-long dilatory discovery practices" was not "sufficient to establish that the crime-fraud waiver should be applied in this case", **[Doc. 113, page 25-26]** is not unreasonable and does not reflect a failure of a good faith belief.

In addition, Defendant's counsel offered to allow Plaintiff's counsel to hire, at the Defendant's expense, a computer specialist to determine if any other information regarding Chief Schultz's calendar could be found on the computer. Plaintiff's counsel apparently did not take advantage of that opportunity.

Plaintiff further argues that Magistrate Judge Torgerson's conclusion that he was "not convinced that Plaintiff has made a prima facie showing that a crime or fraud has occurred" because the allegation of such is "speculative at best" **[Doc 113, page 26]**, is in error. However, Magistrate Judge Torgerson was correct in finding that Defendants did not intend to disclose the actual e-mail correspondence between Chief Schultz and his attorney. As he found, the cover letter in the envelope delivered to Plaintiff's counsel's office stated that a privilege log for the e-mails was being provided,

9

rather than the actual e-mails. Clearly, a mistake had been made and that the disclosure was inadvertent. Plaintiff's counsel admitted as much in her reply. "As soon as she [Plaintiff's counsel] learned [Chief Schultz's statement] was from e-mails between Ms. Levy and Chief Schultz and she [Plaintiff's counsel] reviewed the cover letter indicating there was supposed to be a privilege log, rather than a production, no more information was transmitted and the documents were sealed for this court's review." **[Doc. 104, p. 2.]**

Although Defendants did not take immediate steps to rectify their error, this was because they did not realize the error was made until it was brought to their attention by Plaintiff's counsel. Within a short time after production of the e-mails, Plaintiff's counsel realized the error. She promptly and commendably sealed the communications and directed her paralegal not to speak further of the contents of the privileged communications. Once defense counsel was alerted to the disclosure, she immediately wrote a letter explaining that a mistake was made in producing the actual e-mails.

In applying the crime-fraud exception to the attorney-client privilege, the Tenth Circuit Court of Appeals found, "[T]he privilege is not worthy of protection at all costs . . . ." [ ] Because it "withhold[s] relevant information from the factfinder," *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (citation omitted), the "attorney-client privilege does not apply where the client consults an attorney to further a crime or fraud." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir.1995) (*quoting In re Grand Jury Proceedings (Company X)*, 857 F.2d 710, 712 (10th Cir.1988)). "It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy,' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime."

Zolin, 491 U.S. at 563, 109 S.Ct. 2619 (citations omitted).

In re Grand Jury Subpoenas, 144 F.3d 653, 659-60 (10th Cir.), *cert. denied*, 525 U.S. 966 (1998). The Court further noted: "To invoke the crime-fraud exception, the party opposing the privilege must present prima facie evidence that the allegation of attorney participation in the crime or fraud has some foundation in fact. The evidence must show that the client was engaged in or was planning the criminal or fraudulent conduct when it sought the assistance of counsel and that the assistance was obtained in furtherance of the conduct or was closely related to it. The exception . . . appl[ies] if the assistance was used to cover up and perpetuate the crime or fraud." Id. (internal citations omitted). The author of the leading treatise regarding the attorney-client privilege and the crime-fraud exception states that "[p]rocedurally, in order to claim this exception to the privilege, the proponent seeking to pierce the privilege must first make a *prima facie* showing that a crime or fraud has occurred." Edna Selan Epstein, 1 The Attorney-Client Privilege and the Work-Product Doctrine, p. 671 (5th Ed. 2007). She further writes that "more than mere allegations usually must be adduced," before the crime-fraud exception pierces the privilege. Id. Plaintiff contends that the Court should review the sealed and privileged e-mails between defense counsel and Chief Schultz because the crime-fraud exception to the attorney-client privilege applies in this case.

Plaintiff argues that Magistrate Judge Torgerson was in error when he found that the contents of the e-mail does not "evince criminal or fraudulent activity", but that it merely "relate[s] to a discussion between client and counsel regarding production of documents as ordered by the Court," **[Doc. 113, page 27]**. This Court does not agree.

The determination of whether Plaintiff has made a *prima facie* case that "the allegation of attorney participation in crime or fraud has some foundation in fact" is left to the sound discretion

11

of the court. *Motley*, 71 F.3d at 1551 (internal citations omitted). The decision whether to conduct an *in camera* review similarly is left to the sound discretion of the court. Id. at 1551-52.

Magistrate Judge Torgerson found that Plaintiff has not shown a "factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the [e-mails] may reveal evidence to establish that the crime-fraud exception applies." *See* id.  This Court is also unpersuaded that Plaintiff has met his burden to establish that the crime-fraud exception applies here, and does not find the conduct sufficient to establish that the crime-fraud waiver should be applied in this case.

Magistrate Judge Torgerson did not err in finding that Plaintiff has not made a *prima facie* showing that a crime or fraud has occurred. *See* Epstein, 1 The Attorney-Client Privilege and the Work-Product Doctrine, p. 671.

## CONCLUSION

The Plaintiff has failed to establish that Magistrate Judge Torgerson's denial of the Plaintiff's request for an *in camera review* and production of the e-mail was "clearly erroneous or contrary to law" pursuant to Fed.R.Civ.P. 72(a).

**IT IS THEREFORE ORDERED** that Plaintiff's Objection to Magistrate Judge Torgerson's December 10, 2008 Discovery Order **[Doc. 113]**  is **OVERRULED**.

Dated this 31ST day of March, 2009.

MARTHA VAZQUEZ
CHIEF U.S. DISTRICT JUDGE